## Clyde versus Graver.

1. Freight was delivered to the agent of transporters and he made the contract for carriage without delivering a bill of lading or without excepting dangers by fire; the form of the plaintiff's usual bill of lading which contained such exception was not evidence for the transporters.

2. The agent of the transporters, at the request of the shipper, undertook to obtain orders for the freight from government storehouses and did obtain them and got the freight. *Held*, that he was not the agent of the shipper.

3. A vessel whose route was by the Potomac river, Chesapeake Bay, Chesapeake and Delaware Canal to Philadelphia, is "used in rivers and internal navigation" under the Act of Congress of March 3d 1851.

February 6th 1867. Before WOODWARD, C. J., THOMPSON, STRONG and READ, JJ. AGNEW, J., at Nisi Prius.

Error to the District Court of *Philadelphia.*

This was an action of assumpsit by William L. Graver against Thomas P. Clyde & Co., as common carriers, for the loss of a number of boxes of bread, shipped at Alexandria for Philadelphia.

On the trial, before Sharswood, P. J., Van Horn, the agent of the plaintiffs, testified that having bought of the quartermaster at Washington 7000 boxes of bread, which were stored at Alexandria, he made an agreement in writing with the agent of the defendants as follows:

"Alexandria, Nov. 11th 1865.

"Will take the seven thousand boxes of bread, usual size, at ten cents box freight, to be carried at our convenience within twenty days, to Philadelphia.

"M. ELDRIDGE & Co.
"Express Line."　　　　　　　　　　　　　　　　　"Agents.

1000 boxes of the bread were shipped on the steamboat Liberty, which was burned and the bread lost.

Eldridge, the agent, testified that Van Horn said he did not know how he would get the order from Washington for the delivery of the bread, and that he (Eldridge) told him he would go to Washington as a matter of accommodation for him, and get his orders, that he had to go several times, and had a good deal of trouble before he got them.

The defendants then proposed to ask the witness, "Did you know the terms on which the steamer carried when you received the bread for Graver and had it put on board?"

[Clyde *v.* Graver.]

A paper, being the form of a bill of lading used by the defendants, in which "dangers by fire" were excepted, was handed to the witness.

The defendants proposed to ask him "Is this the form of the bill of lading issued by this steamer and line?"

Both these offers were rejected, and exceptions taken.

It was also proved that the route of the steamer on which the bread was shipped was by the Potomac river, across the Chesapeake Bay to Back river, by the Chesapeake and Delaware Canal, and up the Delaware river; that the vessel did not go to sea on that route, as it did not go outside of Cape Henry. It was burned near Matthias Point, on the Potomac.

The defendant requested the court to charge:—

1. If Eldridge undertook to have the goods shipped by the steamer at plaintiff's request, express or implied, he became the agent of the plaintiff for that purpose; and if he knew the terms on which the steamer undertook to carry, and did not dissent from the terms expressed in the customary bills of lading, the defendant is not liable for the loss, if it was by fire, and that is a loss or peril excepted by the usual bill of lading.

2. The evidence shows the loss was under circumstances which discharge the owner.

3. If the vessel was upon a voyage which required her to navigate the lower part of Chesapeake Bay, the owner is not liable for a loss by fire occurring on such voyage, unless it was through his carelessness, or by his design.

4. That the Liberty was not a canal-boat, barge or lighter, within the meaning of the Act of Congress.

The judge affirmed the 4th point, and refused the others, and also charged "if the usual route of this boat did not touch the ocean or open sea, the Act of Congress does not apply, and that Chesapeake Bay, within the capes, is no part of the ocean."

The Act of Congress referred to is the Act of March 3d 1851, § 1, Brightly's Dig. 834, pl. 49: "No *owner* of *any* ship or vessel shall be liable to answer for damage to goods shipped on board such ship or vessel by fire, &c."

Sect. 7, p. 835, pl. 56: "This act shall not apply to the owner of any canal-boat, barge or lighter, or to any vessel of any description whatsoever used in rivers or inland navigation."

The verdict was for the plaintiff for $948.75.

The errors assigned were the rejection of the defendants' offers of evidence and refusal to affirm their points.

*R. C. McMurtrie,* for plaintiffs in error.—Eldridge was the agent of the plaintiff, as well as of the defendant, and notice to Eldridge bound the plaintiff: Story on Agency, § 140.

Actual notice of terms on which carriers accept goods, is equi-

[Clyde v. Graver.]

valent to an agreement to abide by that as the contract: Chitty on Carriers 174; Whitesell v. Crane, 8 W. & S. 369; Camden & Amboy Railroad v. Baldauf, 4 Harris 77, 78; Chitty on Carriers 163-4.

The defendants are not liable under the Act of Congress of March 3d 1851: Moore v. Am. I. Co., 24 How. 1; Hale de Jure Maritimo, Harg. L. Tr., c. 4, p. 10; 5 Mason 290, 298.

*G. H. Earle* and *R. P. White*, for defendant in error, cited Bean v. Green, 3 Fairf. 423; Niagara v. Cordes, 21 How. 26; Bouvier's Law Dict.; Boswell's Law Dict.; Webster's Dict.; Worcester's Dict., "*Inland*"; Rees' Encyclop.; Encylcop. Britannica, "*Inland Navigation*."

The opinion of the court was delivered, March 21st 1867, by

WOODWARD, C. J.—Charles Van Horn having bought 7000 boxes of army bread at Washington, in the fall of 1865, 6000 for Graver and 1000 for himself, went to Alexandria, where the bread was stored, and arranged with M. E. Eldridge, the accredited agent of the defendants at that place, for the transportation of the boxes by their express line to Philadelphia. The agreement was reduced to writing in these words:—

{ U. S. }          "Alexandria, November 11th 1865.
{ stamp }  "Will take the 7000 boxes of bread, usual size, at 10 cents a box freight, to be carried at our convenience, within twenty days, to Philadelphia.
          "Signed,          "M. ELDRIDGE & Co.,
"Express line."          "Agents."

Orders had to be obtained from the proper department at Washington for the delivery of the boxes out of the storehouses at Alexandria, and as Van Horn wished to return immediately to Philadelphia, he requested Eldridge to go to Washington and get the orders, which Eldridge agreed to do. Some of them were obtained with considerable difficulty, but Eldridge finally got them and shipped several lots of the bread, which arrived safely. The last lot of 1000 boxes were shipped on board the steamer "Liberty," which, on her way down the Potomac took fire, and was totally consumed, with her whole cargo, including the bread.

The action was assumpsit against Clyde & Co., common carriers, for this lot of bread. No bill of lading was executed, but upon the trial the defendant offered to show that the form of bill which they ordinarily gave excepted dangers by fire.

The court rejected the evidence, and we think rightly. The excepting clause in a bill of lading which was *not issued*, was certainly irrelevant. The contract under which the shipment was

made contained no such exception, and it was scarcely worth while for the court and jury to inquire what exceptions would have been found in a bill of lading had one issued, or that the defendants' usual course of business was to except fire risks.

But inasmuch as Eldridge had undertaken, at the instance of Van Horn, to procure the orders for the several lots of bread, and to attend to the shipment of it, the court was asked to rule that he became the plaintiff's agent, and if he knew of the terms on which the steamer undertook to carry, and did not dissent from them, the defendants were not liable, for it was customary to except losses by fire. . This was a very ingenious but too artificial a mode of transferring ·the loss by fire from the defendants to the plaintiff. Doubtless, Eldridge knew the usual conditions upon which the defendants received goods for transportation, for he was their proper agent, but there was no evidence to affect the plaintiff with notice of the exception of risks from fire, for Eldridge was not his agent. He acted as the agent of the defendants in procuring this freight, and in defining in writing the terms of the transportation ; and that he acted within his powers is shown by their acquiescence in the transportation of the several lots before the last. The contract to carry was made in November 1865, and from that time to the 4th of the ensuing January, during which the bread was arriving in Philadelphia, was long enough for the defendants to learn on what terms the shipments were made, and to disaffirm them if they transcended the powers of their agent. Van Horn was plaintiff's agent, but he had notice of no such condition as is now attempted to be imposed upon the plaintiff. The case resembles in these features that of· Bean *v.* Green, 3 Fairfield R. 422, where the owners of a line of stages were sued for the loss of a trunk that had been delivered to their driver by a postmaster, with whom the plaintiff had left the trunk, but the fare for which had not been paid, nor was it entered in the way-bill. The proprietors had given notice and brought it home to the postmaster that they " would not be accountable for any baggage unless the fare was paid, and the same was entered on the way-bill," and the attempt there was, as here, to affect the plaintiff with notice through the so-called agent. But the court said the postmaster could not be regarded as the agent of the owner, but might with at least equal propriety be deemed the agent of the defendants, and on this ground overruled the defence.

The propriety of regarding Eldridge exclusively as the agent of the defendants in this case is much more apparent than the ruling in that case. For as the local agent of the defendants, it was according to his employment to solicit freight, to accommodate customers, and to facilitate shipments. And all that he did in the premises was known to his employers, and tacitly approved by them until liability attached. The attempt to affect

[Clyde v. Graver.]

the plaintiff with the excepting clause of the bill of lading, not adopted in this instance, was properly overruled.

The only other ground of defence was upon the Act of Congress of 3d March 1851, Bright. Dig. 834, which exempts owners of any ship or vessel from liability for loss of goods by means of " any fire happening to or on board of any such ship or vessel, unless such fire is caused by the design or neglect of such owner or owners." But the 56th section of the act provides that it shall not apply to the owners of any " canal-boat, barge or lighter, or to any vessel of any description whatsoever, used in rivers or inland navigation."   As the fire in this instance was not caused by design or neglect, the only question upon this statute is whether the steamer was used in rivers or inland navigation.   And on this point there can be no doubt.   Her route was by the Potomac river, Chesapeake Bay, Chesapeake and Delaware Canal, and Delaware river to Philadelphia ; and Smith, her master, swore that " we do not go to sea on this route, as we do not go outside Cape Henry." Thus the passage through Chesapeake Bay is inland navigation, as that by the rivers Potomac and Delaware confessedly is.   This case falls then within the 7th section of the Act of Congress, and the common-law liability of the carrier remains as if the act had not been passed.

The judgment is affirmed.